———o———

5354.

(Court of Appeal, arish of Orleans.)

## T. A. GREER vs. NEW ORLEANS RAILWAY & LIGHT COMPANY.

Questions of fact only are involved.

Appeal from the Civil District Court, Division "B."

Woodville & Woodville, for plaintiff and appellant.

Dart, Kernan & Dart, for defendant and appellee.

GODCHAUX, J.—In dismissing plaintiff's suit, the learned Judge of the lower Court supported his judgment by the following written opinion:

"The plaintiff sues the defendant for nine hundred and twenty dollars damages. He alleges that an auto truck belonging to him was struck by one of defendant's cars and damaged to that extent.

"The case turns upon questions of fact, and, as in most collision suits, the testimony is conflicting. The facts, as found by the Court, are about as follows:

"On July 14, 1909, about nine o'clock in the morning, the plaintiff, who is a plumber, was going up St. Charles Street in an auto truck, belonging to him. The truck was about sixteen feet long, and loaded with plumbing material, gutters and pipes weighing about three thousand pounds. He was on the river side of St. Charles Street, moving slowly, because three one-mule garbage carts were ahead of him, and one of the four cylnders of the machine was out of order. The plaintiff was running the truck. One of his employees, a boy, was sitting by him, and another employee was on a foot step in the rear. He was bound for Rosa Park on the woodside of St. Charles Street. When he reached Octavia Street he started to cross St Charles Street behind one of the garbage carts. His auto, as he started turning, either stopped a moment or was barely moving. At the crossing was an elevation to the track of about five feet in length. As he turned and started up the incline, he increased the speed, but on account of the elevation, the load in the auto and the missing cylinder, the auto was moving slowly. One of defendant's Tulane Avenue cars was coming

— 87 —

down St. Charles Street on the track of the neutral ground nearest to the riverside of St. Charles Street at full speed. The car had a heavy load of passengers, and was behind time. It passed passengers at the street above, St. Joseph street, leaving them for the car following. When the front wheel of the auto reached the first rail of the downtown track the car was from sixty to one hundred feet away, the motorman sounded his gong, turned off the power and put on his brakes. Before he could stop the car, it struck the auto about the rear axle, and knocked it from the track. The head of the auto faced diagonally uptown, and one of the rear wheels was on the neutral ground between the tracks and the other on the uptown track. The force of the blow threw the boy from his seat to the ground, but fortunately he was not injured, and scattered a part of the load on the ground. The car stopped at the usual stopping place for passengers, or about eight feet beyond the auto.

"From the facts the Court is of the opinion that plaintiff did not judge correctly the distance and speed of the car when he started to cross the track, as it was within one hundred feet of Octavia Street when the front wheels of the auto were at the first rail, and it was impossible for the motorman to stop the heavily loaded car running at full speed, twelve miles an hour, in less than one hundred and twenty-five feet. The plaintiff misjudged the speed of his crippled auto, and did not make allowance for the elevation in the street. He no doubt thought he could cross ahead of the car, but he could not do so. His front wheels cleared the track, but his hind wheels were between the rails. His employee who was standing on the footboard of the auto saw

there was bound to be a collision, for when the front wheels of the auto passed over the first track and the car was one hundred feet away, he stepped off and stood on the ground.

"The accident was caused by the negligence of the plaintiff in a crippled auto attempting to cross the track very slowly ahead of a fast approaching car. The car could not leave the track and avoid the auto, and the motorman did all he could to stop the car in the short space and time he had when he saw plaintiff was about to cross. Plaintiff could easily have awaited for the car to pass, and it was his duty to do so, considering the near proximity of the car and the condition of the street and his heavily loaded, crippled auto."

Plaintiff admits that "the facts in this opinion are in the main correct" but challenges the correctness of the Court's finding as to the distance separating the car from the auto-truck at the moment when the latter started to make the crossing and as to the space within which it is possible to bring a street car to a full stop. However, the testimony on the whole supports the Court's conclusions in these particulars; and, moreover, irrespective of what may be the mathematically exact figures as to distance, time and speed, our consideration of the record convinces us that when plaintiff started his truck across the track, the street car was in such close proximity that it was impossible for the motorman to stop his car in time to avert a collision.

We are fully in accord with the conclusions of the lower Court and its judgment is affirmed.